Filed 2/24/14  P. v. Posey CA6

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H039347 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. CC932468) |
| v. | |
| HOWARD HAROLD POSEY, JR., | |
| Defendant and Appellant. | |

Defendant Howard Harold Posey, Jr., pleaded no contest to grand theft from a person (Count 1) and misdemeanor battery of a cohabitant (Count 2).  (Pen. Code, §§ 484, 487, subd. (c), 242, 243, subd. (e).)[1]  The trial court granted a five-year term of probation including one year in county jail as a condition of probation.  After defendant admitted violating the terms of his probation, the court imposed a sentence of two years in state prison on Count 1 and granted the victim's request for a no-contact protective order.  The court ordered that the protective order remain in effect indefinitely.  On appeal, defendant challenges the issuance of a lifetime protective order.  He contends the court failed to provide notice or a hearing before issuing the order.  He also argues the order was issued without a sufficient factual basis.

---

[1] Subsequent undesignated statutory references are to the Penal Code.

We conclude that the trial court lacked authority to issue a protective order of indefinite length. Any order under section 136.2, subdivision (a) could not have been enforced past pendency of the criminal proceeding. Second, the court lacked authority to impose a protective order as a condition of probation because defendant's probation had been revoked and he was sentenced to a term in state prison. Although the court had jurisdiction to issue a protective order under section 136.2, subdivision (i), the maximum duration for such an order is 10 years. We will therefore reverse and remand for resentencing with directions to impose a sentence on Count 2 and to set the length of the protective order, if any, according to the criteria set forth in section 136.2, subdivision (i).

## I. FACTUAL AND PROCEDURAL BACKGROUND[2]

At the time of the offense, defendant, 52 years old, lived with his girlfriend, Michele Geracy, in an apartment in San José.[3] They had been dating for about two and a half months, and they had lived together at the apartment for about a month. Before living at the apartment, they were homeless and lived out of Geracy's car.

On the evening of December 25, 2008, Geracy called 911 to report that defendant had taken money from her purse. A San José police officer arrived at their residence to interview her.[4] Geracy told police that she and defendant had been drinking when they got into a "very short argument." Defendant took her car keys and drove her car to the

---

[2] Defendant's opening brief also cites to the record of a prior appeal in this matter. (*People v. Posey* (May 28, 2010, H034805) [nonpub. opn.].) We will take judicial notice of the record in the prior appeal. (Evid. Code, §§ 452, subd. (d), 459, subd. (a).)

[3] It appears they later married each other. At a hearing in 2013, Geracy appeared on the record as "Michele Posey" and referenced their marriage.

[4] Transcripts of the 911 calls, Geracy's interview with the police, and defendant's statement to the police were included in the record of the prior appeal. Our narrative of the facts is based on these transcripts and the facts set forth in the probation officer's petition for modification of the terms of probation.

liquor store without her permission. He returned with beer and told Geracy he disapproved of her drinking. The argument then escalated.

To scare defendant, Geracy falsely told him she had called the police while he was gone. Defendant said he was "done" with her, and started to leave the apartment. On the way out, he took her purse. As he was walking out the door, Geracy stood up and approached the defendant while he held her purse in his hand. When she was about a foot away from him, he pushed her once, causing her to fall and hit her head. She suffered a small bruise on the back of her head, and a small cut on her forearm. Defendant left the apartment.

At that point, Geracy called 911. While she was on the phone with the dispatcher, defendant returned to the apartment, opened the door, and threw her purse back into the apartment before leaving again. Geracy discovered her purse was missing $240. When police subsequently interviewed defendant, he admitted that he took money out of Geracy's purse and pushed her. He said he did not intend to hurt her, and he did not realize she was hurt until two days later. He apologized to Geracy, and they "made up."

A felony complaint charged defendant with grand theft from a person (Count 1) and misdemeanor battery of a cohabitant (Count 2). (§§ 484, 487, subd. (c), 242, 243, subd. (e).) The complaint also alleged a "strike" prior conviction for robbery. (§§ 667.5, subd. (c), 1192.7, subd. (c), 667, subds.(b)-(i), 1170.12.)

On April 7, 2009, defendant pleaded no contest to both counts and admitted the strike prior conviction. In exchange, the parties agreed to a sentence of no more than 32 months in state prison, and defendant was allowed to move to strike the prior conviction under *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497, 530-532. The parties

stipulated to a factual basis for the plea based on the police reports and related documents.[5]

On August 7, 2009, the trial court granted defendant's *Romero* motion and struck the prior conviction for purposes of sentencing. The court suspended imposition of the sentence and granted defendant probation for five years, including one year in county jail as a condition of probation. As another condition of probation, the court issued a "criminal protective order specifying peaceful contact" to remain in effect throughout the probationary period. The court cited section 136.2, subdivision (g), as the statutory basis for the peaceful contact order. On appeal, this court affirmed the judgment after review under *People v. Wende* (1979) 25 Cal.3d 436. (*People v. Posey*, (May 28, 2010, H034805) [2010 WL 2170899].)

On February 26, 2010, the prosecutor, on behalf of Geracy, asked the prosecutor to modify the peaceful contact order to a no-contact order. The trial court granted the request and modified the protective order to a no-contact order. In April 2010, Geracy filed a request seeking to modify the protective order to be a peaceful contact order. On June 30, 2010, the court granted her request and again modified the protective order to be a peaceful contact order. The Judicial Council form CR-160, signed by the trial court, indicates the order is a modification of a criminal protective order issued under section 136.2.[6]

---

[5] The police reports are not included in the record. It is not clear what facts supported the conviction for grand theft from a person under section 487, subdivision (c). The facts set forth in the transcript of the police interview with Geracy and the petition for modification suggest Geracy's purse was not "physically connected to the victim's person" when defendant took it, as required for a conviction of grand theft from a person. (*In re Jesus O.* (2007) 40 Cal.4th 859, 868.)

[6] Defendant attached a copy of this document as Exhibit A to his opening brief. He also attached the Judicial Council form CR-160 for the February 7, 2013 protective order as Exhibit B. The Attorney General does not object to our taking judicial notice of these documents. We hereby do so. (Evid. Code, §§ 452, subd. (d), 459, subd. (a).)

In January 2013, defendant's probation officer petitioned for modification of the terms of probation. The petition alleged several violations based on failed drug tests, use of drugs or alcohol, failure to obtain training or employment, and failure to pay fines and fees. The trial court held a hearing on February 7, 2013. Geracy, who was present, asked the court to change the peaceful contact order back to a no-contact order. She accused defendant of myriad misdeeds, including driving with an open container while her 12-year-old daughter was in the car, causing her utilities to be shut off, causing her to be evicted, causing her to fail to pay spousal support, causing her car to be repossessed, and causing other financial problems for her.

Defendant admitted violating the terms of his probation. The court found defendant knowingly admitted violating probation, and ordered that "probation will remain revoked." The record, however, shows no previous order of revocation. The minutes of several hearings and the petition for modification show the terms of probation were modified numerous times in the preceding years, but none of these documents reflect any revocation of probation. The minute order of the February 7, 2013 hearing indicates that the court revoked probation on that date.

After ordering that probation be or remain revoked, the court sentenced defendant on Count 1 to a term of two years in state prison—the middle term for grand theft from a person. The court then raised the issue of the protective order. When defense counsel inquired as to the sentence on Count 2, the court responded, "I suspended sentence on that, but I'm ordering the restraining order to be in effect." The court then ordered a no-contact protective order and declined to specify an expiration date, stating, "I think it can go beyond any time. I don't lose jurisdiction." Defendant objected to the "indefinite nature of the order" and argued that it must have an expiration date. The court overruled the objection without prejudice to a motion for clarification. The court ordered that the protective order "will apply to both counts since it's the same victim."

5

The minutes of the hearing indicate the protective order is to last for the "Lifetime of victim per Judges [*sic*] order." The Judicial Council form CR-160 for a criminal protective order, signed by the trial court, does not indicate the statutory basis for the order. The form contains boxes for "ORDER PENDING TRIAL (Pen. Code § 136.2)" and "ORDER POST TRIAL PROBATION CONDITION," but neither box is checked. A box labeled "MODIFICATION" is checked. The form contains general references to sections 136.2 and 1203.097, subdivision (a)(2), but nothing indicates which statute formed the basis for the order. Consistent with the minutes of the hearing, the form states that the order is issued for the "Lifetime of Victim per Judges [*sic*] order."

Neither the minutes of the hearing nor the abstract of judgment reference any sentence as to Count 2. On the minutes, "Ct 2" is handwritten next to a checked box labeled "No Further Penalties."

## II. DISCUSSION

In his opening brief, defendant argued that the court erred in two respects in issuing the February 7, 2013 protective order. First, he argued that the trial court failed to provide notice or hold a hearing before ruling on the order. Second, he argued that the evidence is insufficient to support a lifetime restraining order under Family Code section 6345. We subsequently requested supplemental briefing on whether the trial court had authority to issue a protective order under section 136.2, subsection (i). Defendant now contends the trial court lacked authority to issue a lifetime restraining order under that provision.[7]

The Attorney General contends the trial court was authorized to issue a permanent extension order under Family Code section 6345, and that the order was supported by

---

[7] Although defendant did not object to the order on this basis in the court below, we conclude he has not forfeited his claim. (*People v. Ponce* (2009) 173 Cal.App.4th 378, 381-382 [sentencing decisions in excess of the trial court's jurisdiction fall within forfeiture doctrine's exception for unauthorized sentences].)

6

substantial evidence. As to whether defendant received notice and a hearing, the Attorney General contends defendant forfeited those claims by failing to object below. Furthermore, the Attorney General argues that because the trial court merely renewed an existing protective order, defendant was not entitled to a notice or hearing. In response to our request for supplemental briefing, the Attorney General argued that the trial court had no authority to issue a protective order under section 136.2, subsection (i), because that provision was not in effect when the court first issued the protective order.

A. *Standard of Review*

As a matter of statutory interpretation, the question of whether the order was authorized under the statute is reviewed de novo. (*Babalola v. Superior Court* (2011) 192 Cal.App.4th 948, 956.)

B. *Statutory Basis for the Protective Order*

The parties agree that the trial court issued the initial protective order on April 7, 2009, under section 136.2. Furthermore, the parties acknowledge that a protective order issued under section 136.2, subdivision (a) is "operative only during the pendency of the criminal proceedings and as prejudgment orders." (*People v. Selga* (2008) 162 Cal.App.4th 113, 119; *People v. Scott* (2012) 203 Cal.App.4th 1303, 1325; *People v. Stone* (2004) 123 Cal.App.4th 153, 159.) The "only purpose of [section 136.2] is to protect victims and witnesses in connection with the criminal proceeding in which the restraining order is issued." (*Stone*, *supra*, 123 Cal.App.4th at p. 159.) Furthermore, "the absence of any express time limitation on the duration of a restraining order issued under section 136.2 suggests that its duration is limited by the purposes it seeks to accomplish in the criminal proceeding." (*Ibid.*)

Nonetheless, the Attorney General contends the court had authority to issue a permanent protective order under Family Code section 6345. The Attorney General argues that section 136.2 allows the trial court to issue a protective order under subsection (a)(1), which provides for "An order issued pursuant to Section 6320 of the

7

Family Code." (§ 136.2, subd. (a)(1).) The duration of a protective order issued under Family Code section 6320 is governed by Family Code section 6345, which provides that such protective orders "may be renewed, upon the request of a party, either for five years or permanently[. . . .]" (Fam. Code, § 6345, subd. (a).) The Attorney General contends that the reference to Family Code section 6320 in section 136.2, subdivision (a) thereby allows for permanent protective orders under Family Code section 6345.

This argument is not supported by the statutory language. While section 136.2 references Family Code section 6320, it makes no reference to Family Code section 6345. The Attorney General cites no other authority supporting the proposition that the duration of a criminal protective order issued under section 136.2, subdivision (a) is governed by Family Code section 6345. The Attorney General cites cases construing Family Code sections 6345 and 6320, but none of them involve a criminal protective order under section 136.2. (See, e.g., *In re Marriage of Nadkarni* (2009) 173 Cal.App.4th 1483; *Ritchie v. Konrad* (2004) 115 Cal.App.4th 1275.)

Furthermore, the legislative history of section 136.2 does not support the Attorney General's argument. Subsequent to the above cases construing subdivision (a) of section 136.2 as authorizing protective orders operative only during the pendency of criminal proceedings, the Legislature enacted subdivision (i) of section 136.2, effective January 1, 2012. (Stats. 2011, ch. 155, § 1.) This provision requires trial courts to consider the issuance of protective orders in the post-judgment context. "In all cases in which a criminal defendant has been convicted of a crime of domestic violence as defined in Section 13700, a violation of Section 261, 261.5, or 262, or any crime that requires the defendant to register pursuant to subdivision (c) of Section 290, the court, at the time of sentencing, shall consider issuing an order restraining the defendant from any contact with the victim." (§ 136.2, subd. (i).) A Senate Rules Committee analysis of the enacting legislation observed that the adoption of subdivision (i) was necessary so that domestic violence victims would not be required to seek further relief in Family Court

8

once prejudgment protective orders expired at the conclusion of a criminal proceeding. (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 723 (2011-2012 Reg. Sess.), May 2, 2011, p. 2.) No such change in law would have been necessary if trial courts could extend prejudgment criminal protective orders indefinitely under section 136.2, subdivision (a).

For these reasons, we find the trial court had no authority to issue a permanent or lifetime protective order under section 136.2, subdivision (a). Additionally, we note that the court also had no authority to issue a protective order as a condition of probation, e.g. under section 1203.097, because the court had revoked defendant's probation and sentenced him to a term of custody in state prison. (*People v. Ponce*, *supra*, 173 Cal.App.4th at p. 382 [protective order not authorized under section 1203.097 where defendant was sentenced to prison and not on probation].)

C. *Authority for the February 7, 2013 Protective Order Under Section 136.2, Subdivision (i)*

The trial court issued the protective order at issue here—the permanent no-contact order—on February 7, 2013, after defendant's probation had been revoked and defendant had been sentenced to two years in state prison on Count 1. Because the court did not identify any statutory basis for the order, we consider whether it had any basis to issue such an order.

As noted above, section 136.2, subdivision (i) requires the trial court to consider, "at the time of sentencing," whether to issue a protective order in domestic violence cases, as defined therein. An order issued under subdivision (i) "may be valid for up to 10 years, as determined by the court." (§ 136.2, subd. (i).) The Attorney General, however, argues that the court did not issue a new protective order on February 7, 2013. Rather, the Attorney General contends the court merely modified the previously existing protective order. Because subdivision (i) was not effective until January 1, 2012, and because the initial protective order was issued before then, the Attorney General argues

9

subdivision (i) does not apply here. But if the Attorney General were correct, the trial court had no authority to extend the protective order. As explained above, a trial court has no authority to enforce a protective order under section 136.2, subdivision (a) beyond the pendency of the criminal proceeding. Thus, the trial court lost its authority to issue a protective order under subdivision (a) when it pronounced judgment. (*People v. Selga*, *supra*, 162 Cal.App.4th at p. 119.)

The record is ambiguous as to whether the trial court modified an existing order or issued a new order at the February 7 hearing. The Judicial Council form CR-160 for the order indicates that the order was a modification of an existing order. Similarly, the minutes of the hearing indicate that the protective order was modified. But the trial court made no mention of a modification in its oral pronouncement. To the contrary, the court stated that it "will issue a restraining order." On this basis, we conclude that the trial court intended to issue a new protective order on February 7, 2013.

Section 136.2, subdivision (i) provides a statutory basis for such an order. Subdivision (i) applies to "all cases" in which a defendant is "convicted of a crime of domestic violence as defined in Section 13700, a violation of Section 261, 261.5, or 262, or any crime that requires the defendant to register pursuant to subdivision (c) of Section 290[. . . .]" (§ 136.2, subd. (i).) A crime of domestic violence under section 13700 requires that the defendant commit "abuse" against the victim, defined as "intentionally or recklessly causing or attempting to cause bodily injury, or placing another person in reasonable apprehension of imminent serious bodily injury to himself or herself, or another." (§ 13700, subd. (a).)

The court stated that the protective order was based on Count 2, battery of a cohabitant. "A battery is any willful and unlawful use of force or violence upon the person of another." (§ 242.) Thus, battery generally involves "causing or attempting to cause bodily injury," thereby qualifying as "abuse" under section 13700. Battery of a cohabitant, in turn, qualifies as a crime of domestic violence under this definition. This

10

case, therefore, is one in which "a criminal defendant has been convicted of a crime of domestic violence as defined in Section 13700." (§ 136.2, subd. (i).) As such, the sentencing court was required to "consider issuing an order restraining the defendant from any contact with the victim." (*Ibid.*) But the duration of such an order is limited to 10 years, not an indefinite period of time. (*Ibid*.)

For the reasons above, we conclude the trial court lacked jurisdiction to issue the February 7, 2013 protective order of indefinite length. While the court asserted that it "retain[ed] jurisdiction" (presumably with respect to Count 2 since defendant was sentenced to imprisonment for Count 1), the record of the February 7, 2013 hearing is ambiguous as to whether—or how—the court sentenced defendant on Count 2. The court simply stated that the sentence on Count 2 remained suspended. Apart from issuing the protective order, the court took no further action with respect to Count 2, and the failure to impose a sentence on Count 2 resulted in an "unauthorized absence of sentence." (*People v. Alford* (2010) 180 Cal.App.4th 1463, 1472.) "A sentence must be imposed on each count . . . ." (*Id.* at p. 1469.) (See also *People v. Superior Court* (*Roam*) (1999) 69 Cal.App.4th 1220, 1230 ["The trial court has no power to suspend sentence except as incident to the grant of probation."].) Accordingly, on remand, we will instruct the court to impose a sentence on Count 2.[8]

Because the trial court could have issued a protective order with a duration up to 10 years under subsection (i) of section 136.2, we will vacate the indefinite protective order and remand with instructions to consider whether to impose a protective order lasting up to 10 years. In accordance with the statute, the duration of the protective order, if any, shall be "based upon the seriousness of the facts before the court, the probability

_____

[8] We note that at the time of the probation revocation hearing, defendant had accrued 536 days of credit, and more than three years had passed since the initial grant of probation.

11

of future violations, and the safety of the victim and his or her immediate family."
(§ 136.2, subd. (i).)[9]

## III.    DISPOSITION

The February 7, 2013 protective order is vacated, and the judgment is reversed. On remand, the trial court shall impose a sentence as to Count 2 and consider whether to issue a protective order under section 136.2, subdivision (i), with a duration no greater than 10 years.  Defendant shall be allowed to argue the evidence is insufficient to support such an order.

---

[9] We need not consider defendant's remaining arguments.  He now has notice of a pending hearing on the matter, and he may argue at the hearing that the evidence is insufficient to support a protective order.

_____

Márquez, J.

I CONCUR:

_____

 Grover, J.

I CONCUR IN JUDGMENT ONLY:

_____

 Bamattre-Manoukian, Acting P.J.

13